UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                  Case No. 17-cr-20758

v.

                                  Honorable Victoria A. Roberts

JAMES DESHAWN WILLIAMS,

       Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS [CORRECTED][1]  [Dk# 27]**

---

On June 22, 2018, the Supreme Court decided *Carpenter v. United States*, No. 16-402, holding that accessing seven days or more of cell site location information (CSLI) from a cell phone carrier constitutes a search under the Fourth Amendment. *Id.*, slip op at 11 & fn.3. *Carpenter* created new law: the government must now obtain a search warrant to access long-term CSLI despite the provisions of the Stored Communications Act, 18 U.S.C. §2703(d).

But this new rule of law does nothing to change the admissibility of CSLI in this case because the government had "an objectively reasonable good-faith belief"

---

[1] The government initially filed its response with an incorrect title, see Dk #28. This is the corrected version.

that no warrant was required. *United States v. Pembrook*, 876 F.3d 812, 823 (6th Cir. 2017).

## I.       Facts and procedural history

On October 12, 2014, there was a party at the Whitehouse nightclub in Detroit. Several hundred people attended. During the party, Williams approached Lamont Calhoun—armed with a handgun—and shot him in the head. Despite suffering life-threatening injuries, Mr. Calhoun survived.

Nine months later, Williams set out to finish what he tried to do earlier: kill Lamont Calhoun. On July 12, 2015, Williams saw Calhoun riding a motorcycle in downtown Detroit. Williams began chasing Calhoun and the chase continued onto the Lodge freeway at speeds of over 90 miles per hour. Williams was in a red Pontiac Bonneville and Calhoun was on a motorcycle. As he got close enough to Calhoun, Williams discharged a firearm from his car, striking Calhoun in the back, causing him to crash the motorcycle.

Throughout the course of the investigation of James Williams, [2] law enforcement utilized a number of tools, including obtaining CSLI for phone numbers utilized by Williams. At trial, the government intends to admit CSLI evidence for the following cell phone number:

---

2 Williams is under investigation for several other violent criminal acts in addition to the Whitehouse and Lodge Freeway shooting.

| Phone number | 2703(d) Order | Timeframe | Date of Application |
|---|---|---|---|
| (517) 304-0044 | 17-US-60031-21 | 06.01.14 - 08.31.15 | July 12, 2017 |

The CSLI evidence will prove that Williams' cell phone number utilized cell towers in proximity to the shooting at the Whitehouse and the shooting on the Lodge Freeway.

## II.    Argument

### A. Stored Communications Act and Caselaw Pre-*Carpenter*

Up until June 22, 2018, the Stored Communications Act provided the legal basis for obtaining CSLI:

> A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents communications) . . . when the governmental entity . . . obtains a court order for such disclosure under subsection (d) of this section[.]

18 U.S.C. §2703(d). Under subsection (d), the court order "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." *Id.* at § 2703(d).

Courts in the Sixth Circuit and others have repeatedly held—despite Fourth Amendment challenges regarding CSLI—that court orders pursuant to the Stored

Communications Act constituted a sufficient means by which to obtain data. *In re U.S. for Historical Cell Site Data*, 724 F.3F.3d 600 (5th Cir. 2013); *United States v. Davis*, 785 F.3d 498 (11th Cir. 2015); *United States v. Graham*, 824 F.3d 421 (4th Cir. 2016); *In re Application of U.S. for an Order Directing a Provider of Electronic Communication Service to Disclose Records to Government*, 620 F.3d 304 (3d Cir. 2010); *United States v. Thompson*, 866 F.3d 1149 (10th Cir. 2017); *United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016); *United States v. Pembrook*, 876 F.3d 812 (6th Cir. 2017).

In 2016, the Sixth Circuit decided *United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016). The appeal originated out of the Eastern District of Michigan (2013 WL 6385838, J. Cox). The Sixth Circuit held that the government did not conduct a Fourth Amendment search when it obtained CSLI records from the defendants' wireless carriers, and thus, no warrant was required. The *Carpenter* appeal resulted in a published opinion, making it binding law in our district.

However, on June 22, 2018, the Supreme Court reversed the Sixth Circuit's decision, holding that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI," and thus, a warrant is required to obtain such information. *Carpenter*, slip op 11. Defendant now moves this Court to suppress the CSLI evidence in this case as violating his Fourth Amendment rights under *Carpenter*.

### B. Good Faith Applies

This Court should not suppress the CSLI data in this case because law enforcement acted in good faith reliance on the Stored Communications Act, even though it has since been determined that the collection of the data violated the defendant's Fourth Amendment rights.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." But it says nothing about suppressing evidence obtained in violation of this command. That rule—the exclusionary rule—is a "prudential" doctrine, *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 363 (1998), created by the Supreme Court to "compel respect for the constitutional guaranty." *Elkins v. United States*, 364 U.S. 206, 217 (1960). Exclusion is "not a personal constitutional right," nor is it designed to "redress the injury" occasioned by an unconstitutional search. *Stone v. Powell*, 428 U.S. 465, 486, (1976). Rather, the rule's sole purpose is to deter future Fourth Amendment violations. *United States v. Leon*, 468 U.S. 897, 909, 921, n. 22, (1984); *Elkins, supra*, at 217 ("calculated to prevent, not to repair"). The rule's operation is limited to situations in which this purpose is "thought most efficaciously served." *United States v. Calandra*, 414 U.S. 338, 348 (1974). Where suppression fails to yield "appreciable deterrence," exclusion is "clearly ... unwarranted." *United States v. Janis*, 428 U.S. 433, 454 n.29

(1976).

Exclusion exacts a heavy toll on both the judicial system and society at large. *Stone*, 428 U.S., at 490–491. It almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence. *Id*. And, in many cases, its bottom-line effect is to suppress the truth and set the criminal loose in the community without punishment. *See Herring v. United States*, 555 U.S. 135, 141 (2009). Society must swallow this bitter pill when necessary, but only as a "last resort." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). For exclusion to be appropriate, the "deterrence benefits of suppression must outweigh its heavy costs." *Davis v. United States*, 564 U.S. 229, 237 (2011), *citing Herring, supra*, at 141; *Leon, supra*, at 910.

In *Illinois v. Krull*, 480 U.S. 340 (1987), the Supreme Court extended the good faith doctrine to searches conducted in reasonable reliance on subsequently invalidated statutes. And in *Davis v. United States*, 564 U.S. 229 (2011), the Supreme Court refused to apply the exclusionary rule when the police conducted a search in objectively reasonable reliance on binding judicial precedent.

Here, at the time the CSLI was obtained, the Supreme Court had not yet decided *Carpenter v. United States*, __ U.S. __ (2018), and the Sixth Circuit had held that historical cell site location information could lawfully be obtained via a court order pursuant to 18 U.S.C. 2703(d).

Further, the question of whether the good faith doctrine applies in the instant

circumstances has already been answered in this Circuit. In *United States v. Pembrook*, 876 F.3d 812 (6th Cir. 2017), defendants argued that the government's obtaining of CSLI violated their Fourth Amendment rights, just like in *Carpenter*. The district court denied their motions to suppress, finding that the § 2703(d) court order was sufficient. But the district court also explained that, even if mistaken, the government had "an objectively reasonable good-faith belief" that no warrant was required. *Pembrook*, 119 F.Supp.3d 577, 595-96 (E.D. MI., July 31, 2015).

On appeal, the Sixth Circuit agreed, quoting the district court's opinion: "[N]o Supreme Court authority established by mid-2014 that obtaining cell-site data – even data that might reveal [the defendants'] daily travel over a six week period or disclose [their] presence in a private place – was a search within the meaning of the Fourth Amendment; nor did any Sixth Circuit case establish such precedent; nor was the out-of-Circuit precedent compelling (or consistent)…[a]lthough it may ultimately become settled [law] that long-term tracking via cell phones…requires a warrant supported by probable cause, that law was not established at the time the Government sought and obtained the cell-site data at issue in this case. Deterrence, therefore will not be forwarded by suppression." *Pembrook*, 876 F.3d at 823 (internal citations omitted). The Sixth Circuit concluded, "[w]e agree and find no constitutional reason to suppress the cell-tower location evidence." *Id.* (internal citations omitted); *see also, United States v. Scott*, 2018 WL 2159916, *7 (E.D. MI.,

May 10, 2018) ("As *Pembroke* makes clear, even if law enforcement officers violated the Fourth Amendment by obtaining the Metro PCS records without a warrant, the records were nonetheless not subject to suppression.").

In addition to *Pembrook*, other courts have likewise preemptively addressed the application of the good faith doctrine in the context of § 2703(d) and the Fourth Amendment. "[E]ven if the SCA [Stored Communications Act] is declared unconstitutional to the extent it allows the Government to obtain court-ordered CSLI without a warrant, the disputed evidence would remain admissible in this case pursuant to the "good faith" exception to the exclusionary rule." *United States v. Simmons*, 2017 WL 6388956 (E.D. Va., December 14, 2017), *citing United States v. Leon*, 468 U.S. 897, 918-21 (1984) and *Illinois v. Krull*, 480 U.S. 340, 349-50 (1987). "In light of the SCA statute adopted by Congress and the President, Supreme Court precedent on the third-party doctrine, and the largely consistent handling of this issue by all other circuits, the Government was objectively reasonable in relying on the statute's validity when requesting CSLI in January of 2016 without first obtaining a warrant." *Id.* (citations omitted). Additionally, "the Court concludes that—even if the Fourth Amendment protects the historical CSLI at issue in this case—the evidence is admissible under the good faith exception to the exclusionary rule." *United States v. Brown*, 2017 WL 3428300, *4 (C.D. Cal., August 7, 2017). And finally, "[l]aw enforcement relied in good faith on the validity of the law they

8

were following…Thus, even if the Court were to conclude that obtaining CSLI is a Fourth Amendment search that requires a finding of probable cause, the Court would deny Defendant's motion to exclude the CSLI and related expert testimony." *United States v. Gray*, 2017 WL 3675383, *6 (D. Arizona, August 25, 2017).

Moreover, in what appears to be the first Circuit Court decision pertaining to the application of the good faith doctrine to CSLI post-*Carpenter*, the Fourth Circuit recently concluded, in a published opinion, that "[w]ithout question, then, the good-faith exception to the exclusionary rule applies to the investigator's actions here." *United States v. Chavez*, --- F.3d ---, 2018 WL 3215914, * 9 (4th Cir., July 2, 2018). That court reasoned:

> [w]hile *Carpenter* is obviously controlling going forward, it can have no effect on [the defendant's] case. The exclusionary rule's sole purpose…is to deter future Fourth Amendment violations. Thus, when investigators act with an objectively reasonable good faith belief that their conduct is lawful, the exclusionary rule will not apply. Objectively reasonable good faith includes searches conducted in reasonable reliance on subsequently invalidated statutes. [The defendant] does not, and cannot, deny that investigators in this case reasonably relied on court orders and the Stored Communication Act in obtaining the cell site records. *Id. (internal citations and quotations omitted)*.

In the instant case, law enforcement's reliance on the authority vested in 18 U.S.C. § 2703(d) was objectively reasonable, because, just like in *Pembrook* and other cases, at the time of the court order (July 2017), no Supreme Court or Sixth Circuit authority existed that would require a warrant. Accordingly, there is no constitutional reason to suppress the cell-tower location evidence.

**III.    Conclusion**

This Court should deny the defendant's motion to suppress.


                                        Respectfully submitted,

                                        MATTHEW SCHNEIDER
                                        United States Attorney


Dated: <u>July 18, 2018</u>                 <u>s/ A. TARE WIGOD</u>
                                        Assistant United States Attorney
                                        211 W. Fort St., Suite 2001
                                        Detroit, Michigan 48226
                                        Phone: (313) 226-9191
                                        tare.wigod@usdoj.gov
                                        P58479

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 18, 2018, the foregoing document was

electronically filed with the Clerk of the Court using CM/ECF, for uploading and

service by electronic notice to counsel and parties authorized to receive

electronically Notices of Electronic Filing.


s/ A. TARE WIGOD
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9191
tare.wigod@usdoj.gov
P58479